1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                          EASTERN DISTRICT OF CALIFORNIA

10

11  JOHN RIGGS, individually, and doing          No.  1:23-cv-00710-KES-SAB
    business as RIGGS EXCAVATION,
12                                               ORDER GRANTING DEFENDANTS'
                     Plaintiff,                  MOTION FOR SUMMARY JUDGMENT AS
13                                               TO THE FEDERAL CLAIMS, AND
            v.                                   DECLINING TO EXERCISE
14                                               SUPPLEMENTAL JURISDICTION OVER
    MARIPOSA COUNTY, et al.,                     THE REMAINING STATE LAW CLAIMS;
15                                               DENYING PLAINTIFF'S MOTION FOR
                     Defendants.                 SUMMARY JUDGMENT; AND
16                                               DENYING PLAINTIFF'S MOTION TO
                                                 AMEND
17
                                                 Docs. 17, 18, 23
18

19          Plaintiff John Riggs brings this action against defendants Mariposa County and David L.

20  Conway asserting claims for (1) denial of substantive due process in violation of the Fourteenth

21  Amendment to the United States Constitution, pursuant to 42 U.S.C. § 1983; (2) denial of

22  procedural due process in violation of the Fourteenth Amendment to the United States

23  Constitution, pursuant to 42 U.S.C. § 1983; (3) denial of substantive due process under Article I,

24  Section 7 of the California Constitution; (4) denial of procedural due process under Article I,

25  Section 7 of the California Constitution; (5) slander per se; (6) trade libel and defamation; (7)

26  intentional interference with contractual relations; (8) intentional interference with prospective

27  economic advantage; (9) intentional infliction of emotional distress; and (10) negligent infliction

28  of emotional distress.  Doc. 1 at ¶¶ 1–141.

                                               1

Defendants move for summary judgment, or in the alternative, partial summary judgment, as to all claims. Doc. 17. Riggs moves for summary judgment, or in the alternative, partial summary judgment, as to the first four claims. Doc. 18. Riggs also moves to modify the scheduling order and for leave to amend the complaint. Doc. 23. For the reasons explained below, defendants' motion for summary judgment is granted in part and denied in part, Riggs' motion for summary judgment is denied, and Riggs' motion to modify the scheduling order and for leave to amend is denied.

## I.    BACKGROUND

### A.    Factual Background[1]

In connection with their motions for summary judgment, the parties submitted the following joint statement of undisputed facts:

> 1.    In July 1, 2010, David L. Conway ("Mr. Conway") was hired by Mariposa County to be the Director of Environmental Health for the Environmental Health Unit of the Mariposa County Health and Human Services Agency (otherwise referred to herein as the "Health Department"); a position he held until his retirement on October 31, 2022. Mr. Conway was authorized to act on behalf of the Health Department as the acting Director and an authorized representative of the Health Officer of Mariposa County.

> 2.    The Health Department, among its other duties, reviews Transient-Occupancy-Tax ("TOT") applications to convert an existing home into a "vacation rental" pursuant to Mariposa County Code ("MCC") § 17.108.180.

> 3.    Plaintiff, JOHN RIGGS individually and doing business as RIGGS EXCAVATION ("Plaintiff"), has a currently active Class A General Engineering contractor's license (License No. 881745), issued by the California Contractors State Licensing Board.

---

[1] The relevant facts that follow are undisputed unless otherwise noted and are derived from the parties' joint statement of undisputed material facts, Doc. 17-3 at 2–3 ("JXUF")); the separate statement of undisputed material facts submitted by defendants and responded to by plaintiff, Doc. 20-1 at ("DSUF"); the separate statement of undisputed material facts submitted by plaintiff and responded to by defendants, Doc. 19-2 ("PSUF"); and the declarations and exhibits submitted in connection with the parties' briefing on the motions for summary judgment. Docs. 17–22. To the extent a party relies on incorrect or unsupported citations in asserting that facts in the DSUF or PSUF are in dispute, the Court deems the corresponding facts identified by the opposing party as undisputed. The Court "rel[ies] on the nonmoving party to identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (quoting *Richards v. Combined Ins. Co.*, 55 F.3d 247, 251 (7th Cir. 1995)).

4.    At all relevant times, including from June 16, 2022, to present, Plaintiff was and is licensed to operate his business in Mariposa County by the California Contractors State Licensing Board.

5.    Plaintiff's business (Riggs Excavation) is a septic inspection, repair, and installation business, which Plaintiff is licensed to operate throughout California including in the county of Mariposa.

6.    On June 16, 2022, Mr. Conway sent Plaintiff a letter stating that:

"The purpose of this letter is to inform you that effective immediately this office will no longer accept certifications from Riggs Excavation to assist us in approving Vacation Rental Applications. This decision is based on the fact that there have been several cases where there are inconsistencies in the reports we have received and what we observed in the field."

7.    The June 16, 2022, letter sent to Plaintiff informed Plaintiff that:

"[The Health Department] recently received a certification that claimed there were no concerns with a septic system, the system had inlet and outlet tees in place and a 600 gallon flow test was conducted. However, upon review of the system it turned out that the tank is partly under the foundation of the garage and the outlet lid was never opened because there is undisturbed asphalt pavement over it. In another case the report stated that the well was 70 feet from the leach field which caused us to send an inspector out to investigate only to find that the only well on the property was more than 100 feet from behind the leach field."

8.    The June 16, 2022, letter sent to Plaintiff informed Plaintiff that:

"If you have any questions, please feel free to contact this office."

9.    On or about June 27, 2022, the Health Department received a TOT septic certificate performed by Plaintiff for a septic system belonging to Bruce Contreras.

10.    On July 13, 2022, Mr. Conway sent Plaintiff an email stating:

"On June 16, 2022, this office sent you two copies of the attached letter informing you that we will no longer accept certifications from your company regarding vacation rental properties. However, we received a certification for a vacation rental completed by you from Bruce Contreras dated June 27, 2022. Mr. Contreras has been informed that we cannot accept the certification and must; therefore, have the certification redone."

3

1    11.    On July 13, 2022, Mr. Conway sent Bruce Contreras an email
     stating that:

2

3         "Per our discussion please be advised that this office will
          need to see soil profile holes next to the existing septic system
          leach field before we can tell you if the system will be

4         approved for use in a vacation rental.   Additionally, the
          certification you submitted from Rigg's Excavation is not

5         acceptable for evaluating the system.   Effective June 16,
          2022, this office no longer accepts certifications for vacation

6         rental applications from Rigg's excavation.  If you have any
          additional questions please feel free to contact our office."

7

8    JXUF ¶¶ 1–11.

9         "One of the main functions and purposes of the Health Department is to monitor and

10   safeguard ground water and environmental health and quality by minimizing the likelihood of on-

11   site septic system failure."  DSUF ¶ 2.  "Failure to properly treat wastewater before it le[a]ches

12   into the surrounding ground water creates a serious environmental, health, and sanitary hazard."

13   *Id.* at ¶ 29.  Thus, "[a]ccurate certificates of inspection are required in connection with the TOT

14   certification process so that the Health Department can review and approve that the septic system

15   that was inspected is up to date with the Mariposa County Code and TOT requirements that are

16   designed to ensure proper wastewater management."  *Id.* at ¶ 9.

17        Carolyn Coder and Kerri Gibbons served as Registered Environmental Health Specialists

18   for the Health Department at all relevant times preceding the filing of this lawsuit.  *Id.* at ¶ 23, 24.

19   Both were responsible for "reviewing septic inspection certificates submitted in connection with a

20   TOT application" and performed "on-site field inspections of septic systems when a discrepancy

21   was found between the existing County septic records and the third-party certifications received

22   by the Health Department."  *Id.* at ¶ 25.  Riggs does not dispute that "[i]n early 2022, David L.

23   Conway, Kerri Gibbons and Carolyn Coder each began to notice an increasing number of

24   discrepancies between existing County records and the TOT septic certificates coming from"

25   Riggs.  *Id.* at ¶ 26.  However, the parties dispute whether Riggs submitted several "demonstrably

26   inaccurate" TOT certificates between 2020 and 2022.  *Id.* at ¶ 28.

27   ///

28   ///

4

1    According to defendants, there were several problems with the TOT certificates Riggs

2    submitted for at least five properties during this time:[2]

3    First, with respect to the "Fish Camp" property, the certificate inaccurately reported the

4    length of a leach line and failed to mention that the leach line and distribution box were

5    completely submerged by ground water—it would have therefore been impossible for Riggs to

6    have conducted the 300-gallon flow test reflected on his certificate, and the septic system would

7    not have "functioned properly" as indicated in the certificate.  *Id.* at ¶ 30.

8    Second, with respect to the "Boyer" property, Riggs' first certificate did not match any of

9    the details that the County had on record for this septic system.  *Id.* at ¶ 31.  The distribution box

10   and two of the four leach lines were overgrown with roots and excessive vegetation such that they

11   were compromised and needed excessive repairs before the Health Department could approve this

12   system for vacation rental use.  *Id.*  Gibbons personally verified this through an on-site inspection

13   with Riggs, but Riggs' second certificate for this property continued to state that the system was

14   in good working order and could be expected to function properly despite the obvious need for

15   repairs.  *Id.*

16   Third, the TOT septic certificate for the "Colorado" property stated the system was in

17   good working order and could be expected to function properly, yet Conway's inspection

18   revealed that the septic tank was structurally comprised, that the outlet side was covered by

19   undisturbed asphalt—thereby indicating that Riggs had not inspected it as he claimed, and that

20   Riggs had omitted mention of an added garage and bedroom, and of leach line depth violations.

21   *Id.* at ¶ 32.

22   Fourth, the TOT septic certificate for the "Ashworth" property incorrectly stated the well

23   was only 70 feet from the leach fields—below the required 100-foot minimum—despite as-built

24   plans showing a compliant 140-foot separation, a discrepancy that could have led to an

25   unnecessary and costly system relocation.  *Id.* at ¶ 33.

26   ///

27

28   ---
     [2] *Id.* at ¶¶ 30–34.  The properties are identified by abbreviated names for ease of reference.

Fifth, with respect to the "Foresta" property, the TOT septic certificate misrepresented the engineered sewage system by incorrectly reporting a single 80-foot gravity leach line instead of two 30-foot pumped lines, despite property dimensions and system design clearly indicating otherwise.  *Id.* at ¶ 34.

Riggs disputes defendants' contentions with respect to these properties.  His version of events is as follows.  From June 2006 through June 27, 2022, Riggs was only hired on two occasions to complete TOT certifications in Mariposa County: (1) for the "Boyer" property, and (2) for a septic system belonging to Bruce Contreras.  Doc. 20-3 at ¶ 9.  As to the "Fish Camp" property, Riggs claims that defendants' challenge regarding the length of the leach line was unsupported by inspection or evidence, that Riggs' inspection showed the system working in November 2020, and that the County's inspection conducted four months later did not account for changes in weather or use.  *Id.* at ¶¶ 13–15.  As to the "Boyer" property, Riggs completed a 600-gallon flow test at both homes on the property, which showed no signs of failure.  *Id.* at ¶ 16b.  Approximately eight months later, during the meeting with Gibbons, additional leach lines were found on the property.  *Id.* at ¶ 16d.  Riggs inspected all lines and sent the homeowner an updated septic certification advising him of a single line failure, but the system was certified as the other three lines were functioning normally.  *Id.* at ¶¶ 16e, f.  Riggs did not have a conversation with Gibbons as to "failing" the entire system, and he subsequently amended the address on the updated certification after the issue was raised by the County.  *Id.* at ¶¶ 16f, g.

With respect to the "Colorado" property, Riggs claims he completed a septic certification understanding that the home was for sale but not knowing it was being purchased for use as a vacation rental property.  *Id.* at ¶ 17a.  He opened the inlet side of the tank to inspect liquid levels, sludge, and tees, and conducted a camera inspection through the solid side.  *Id.* at ¶ 17b.  The outlet side was covered beneath new asphalt the realtor did not want disturbed.  *Id.*  The tank was a standard Mariposa cement model which Riggs classified as 1,200 gallons based on lid spacing and internal measurements, consistent with county practices outside Mariposa—which uniquely requires full-tank and not liquid-level volume.  *Id.* at ¶¶ 17c, d.  A 600-gallon flow test and camera inspection were performed through the inlet to evaluate leach line length and function, but

6

Riggs asserts he did not record leach line depth or width as the inspection was limited to the real estate transaction and he was first informed on May 12, 2022 that those details were required for vacation rentals. *Id.* at ¶¶ 17e, f. With respect to the "Ashworth" property, Riggs asserts that the realtor requested a septic inspection for a home sale, during which Riggs estimated a 70-foot distance from the well to the leach line—an estimate he shared with Carolyn Coder, who later documented it as over 100 feet. *Id.* at ¶ 18. The only items Riggs recalls discussing with Coder are the well at Ashworth and the distance from the well to the leach line. *Id.* at ¶¶ 24, 25. As to the "Foresta" property, Riggs disputes submitting TOT inspections to Mariposa County for the owner, and states that, with no address provided, he cannot confirm what work, if any, was done at this property. *Id.* at ¶ 20.

Riggs asserts that he regularly receives requests to complete septic system inspections throughout various California counties and Mariposa County is the only county that has refused to accept his septic reports for any reason. *Id.* at ¶ 7. Riggs emphasizes a distinction between septic certifications and septic inspections, noting that he provides certifications when the system is in good working order and inspections when problems are identified. *Id.* at ¶¶ 21, 22. According to Riggs, he and Coder did not discuss the requirements for vacation rental inspections versus realty home sale inspections when Coder called him regarding inconsistencies in his TOT certifications. *Id.* at ¶ 24–26. Riggs contends that subsequent steps regarding clarification of the County's requirements or addressing the inaccuracies Coder raised were not discussed. *Id.* at ¶ 26.

Riggs states that he was not notified by Mariposa County inspectors of any concerns regarding his reports being submitted for vacation rentals, and that, had he been informed of such concerns, he would have clarified that his inspections—other than for the "Boyer" property and for Bruce Contreras—were conducted for real estate transactions. *Id.* at ¶¶ 25, 27. According to Riggs, "[i]f one of my septic certifications from a real estate transaction was provided to Mariposa County, this is not something I was aware of until Mariposa County's response to this lawsuit." *Id.* at ¶ 31. He was "completely and utterly surprised" to learn that his certifications would no longer be accepted. *Id.* at ¶ 32. Riggs did not contact Conway after receiving the June

16, 2022 letter, as the letter reflected a final decision and did not appear to provide an appeal process. *Id.* at ¶¶ 33, 34.  He later discovered other property owners and realtors had learned of the County's decision. *Id.* at ¶ 33.  Had the County reached out with their concerns prior to sending the letter, Riggs represents that he "could have easily rectified any issues and also explained that [he had] not been hired to complete vacation rental inspections, but simply to complete inspections for home sales." *Id.* at ¶ 34.

Defendants dispute Riggs' version of events as factually inaccurate and identify the following additional undisputed facts.  Conway personally inspected and verified that the length of the leach line for the "Fish Camp" property was only 25 feet, where Riggs' TOT certificate stated the length was 50 feet.  Doc. 17-4 at ¶ 19.  On March 2, 2021, Riggs Excavation responded to an email from a realtor explaining that the buyer of the "Fish Camp" property was relying on the property functioning as a rental.  Doc. 21-1 at 99.  On March 3, 2021, Conway and Coder confirmed with Riggs via email that the septic system at the "Fish Camp" property would need to be fully evaluated would need "the D box located and uncovered and the ends of any leach lines exposed." *Id.* at 89, 100.  Coder's email responded to a request to accept Riggs' certificate prior to complying with the County's requirements and a prior email from Coder on the same chain explained that "we will need you to expose both ends of the leach line to determine the actual length before we can change the occupancy allowed at the home." *Id.* at 89, 90.

Riggs testified that he knew his certificate for the "Boyer" property submitted on May 11, 2022 was not accepted by the Health Department "because of the root problem" and because the County "needed more working area." *Id.* at 31, 32.  Riggs also testified that he and Gibbons "were talking about repairing the system at Boyer" that same day. *Id.* at 46.  On May 18, 2022, Gibbons wrote a letter to the vacation rental applicant for this property explaining her findings and requiring the leach lines to be "independently flow tested to ensure they are accepting liquid." Doc. 17-6 at 8–9.  Riggs testified that the homeowner asked him to repair, and that he did repair, 15 feet of pipe in the leach field on this property because it was not accepting water due to the existing root growth.  Doc. 21-1 at 33.

///

The Health Department's records show that Riggs submitted 21 total TOT certificates throughout 2020–22, with one TOT certificate being submitted in 2023 after he had been advised that the Health Department no longer accepts his certificates. *Id.* at 103–11. On June 2 and 15, 2022, the Health Department held staff meetings and discussed problems with Riggs' certifications. DSUF ¶¶ 38, 39. Conway requested three recent examples of Riggs' septic certifications for review. *Id.* Coder testified that she did not recall "having specific cases that we discussed in [June 2, 2022] meeting." Doc. 20-2 at 7. Conway testified that inconsistencies were discussed but he could not recall exactly what those inconsistencies were. *Id.* at 62.

The parties dispute whether on May 17, 2022, Coder spoke to Riggs about certification issues on the "Ashworth" property and whether they discussed any difference in certification requirements for rental properties, permanent residences, and properties pending sale. DSUF ¶¶ 40, 41. It is undisputed that Coder informed Riggs that he could contact the Health Department to clarify its requirements in connection with TOT septic certificates. *Id.* at ¶ 44. The following day, Riggs Excavation emailed Gibbons and Coder to ask whether a county inspection form should be used for all properties or only for rental properties. Doc. 20-3 at 16. Coder confirmed the county form should be used for vacation rentals or a "hook up" to existing systems and that no specific form was required for inspections relating to the sale of property. *Id.* Coder also warned of a common scenario in which a new owner, seeking to convert the property to a rental, submits an old certification that lacks sufficient detail and must be resubmitted. *Id.*

Conway determined the Health Department could no longer rely on the veracity and accuracy of Riggs' TOT septic certificates and decided in the June 15, 2022 staff meeting to no longer accept TOT certifications from Riggs. *Id.* at ¶ 46. Riggs did not respond to Conway's letter detailing this decision. *Id.* at ¶ 50. Defendants contend that Riggs could have addressed his grievances under Mariposa County Sewage Disposal Rules section .120 and Mariposa County Public Health Department Policy 13-17; Riggs disputes that these provisions apply to his situation. *Id.* at ¶ 54.

The following facts are not in dispute. "Health Department staff has continued to perform inspections requested by Riggs and to issue permits associated with his general engineering

1   contractor's license for the installation of on-site sewage disposal systems in Mariposa County at

2   all times since June 16, 2022." *Id.* at ¶ 62.  The only service the Health Department no longer

3   accepts from Riggs is his TOT septic certificates, and neither the Health Department nor the

4   County ever suspended or revoked Riggs' contractor's license. *Id.* at ¶¶ 63, 64.  Defendants

5   "never made a false statement to Bruce Contreras, or any other individual, regarding [Riggs']

6   general character, his honesty, his business, or his ability to submit septic certifications in

7   connection with the TOT certification process." *Id.* at ¶ 66.  Riggs was not promised continued

8   employment or work in connection with his submission of TOT septic certifications, he was not a

9   county employee, and he was not a party to any contract or agreement with either the Health

10   Department or the County. *Id.* at ¶ 69.  Other than Riggs, the County "has never had to revoke a

11   third party septic contractor's ability to submit TOT septic certificates before or after the present

12   action." *Id.* at ¶ 70.

13        **B.**    **Procedural Background**

14        Riggs initiated this action on May 8, 2023.  Doc. 1.  On August 17, 2023, a scheduling

15   order was issued, providing that any "motions or stipulations requesting leave to amend the

16   pleadings must be filed by no later than January 15, 2024." Doc. 10 at 2.  The scheduling order

17   was amended twice pursuant to the parties' stipulations.  Docs. 13–16.  Among other

18   modifications, the deadline for the filing of dispositive motions was ultimately extended to

19   December 20, 2024.  Doc. 16 at 2.  "All other aspects of the August 17, 2023 scheduling order, as

20   amended on September 20, 2024, remain[ed] in effect." *Id.*

21        On December 20, 2024, the parties filed cross motions for summary judgment.  Docs. 17,

22   18.  Riggs filed a motion to modify the scheduling order and for leave to amend on January 14,

23   2025.  Doc. 23.  The motions are fully briefed and were taken under submission on the papers

24   pursuant to Local Rule 230(g).  Doc. 27.

25   **II.**    **LEGAL STANDARDS**

26        **A.**    **Motion to Amend**

27        Generally, a motion to amend is subject to Rule 15(a) of the Federal Rules of Civil

28   Procedure, which provides that "[t]he court should freely give leave [to amend] when justice so

1    requires." Fed. R. Civ. P. 15(a)(2). However, once a court has entered a pretrial scheduling order

2    pursuant to Federal Rule of Civil Procedure 16, the standards of Rule 16, rather than Rule 15,

3    govern amendment of the pleadings. *See Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604,

4    607–08 (9th Cir. 1992). Under Rule 16, scheduling orders may be modified "only for good cause

5    and with the judge's consent." Fed. R. Civ. P. 16(b)(4).

6    "Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking

7    amendment." *Johnson*, 975 F.2d at 609. "If that party was not diligent, the inquiry should end."

8    *Id.* "[T]he focus of the inquiry is upon the moving party's reasons for seeking modification,"

9    although the "existence or degree of prejudice to the party opposing the modification might

10   supply additional reasons to deny [the] motion." *Id.* (citing *Gestetner Corp. v. Case Equip Co.*,

11   108 F.R.D 138, 141 (D. Me. 1985)). If good cause is found, the court must then evaluate the

12   request to amend in light of Rule 15(a)'s liberal standard. *Id.* at 608.

13   Other than by amendment as a matter of course, Rule 15 provides that a party may amend

14   its pleading only by leave of court or by written consent of the adverse party and that leave shall

15   be freely given when justice so requires. Fed. R. Civ. P. 15(a)(1), (2). The Ninth Circuit has

16   instructed that the policy favoring amendments "is to be applied with extreme liberality."

17   *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990). Although the

18   decision whether to allow amendment is in the court's discretion, "[i]n exercising its discretion, a

19   court must be guided by the underlying purpose of Rule 15—to facilitate decision on the merits

20   rather than on the pleadings or technicalities." *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183,

21   186 (9th Cir. 1987) (internal quotation marks and citation omitted).

22   The factors commonly considered to determine the propriety of a motion for leave to

23   amend are "undue delay, bad faith, undue prejudice, futility of amendment," and "the number of

24   times the plaintiff has already been allowed to amend." *Schwartz v. Miller*, No. 23-1343, 2025

25   WL 2473008, at *9 (9th Cir. Aug. 28, 2025) (cleaned up) (quoting *Foman v. Davis*, 371 U.S. 178,

26   182 (1962)). "These factors, however, are not of equal weight in that delay, by itself, is

27   insufficient to justify denial of leave to amend." *DCD Programs*, 833 F.2d at 186. "The other

28   factors used to determine the propriety of a motion for leave to amend could each, independently,

11

1   support a denial of leave to amend a pleading." *Beecham v. City of W. Sacramento*, No. 2:07–cv–

2   01115–JAM–EFB, 2008 WL 3928231, at *1 (E.D. Cal. Aug. 25, 2008) (citing *Lockheed Martin*

3   *Corp. v. Network Solutions, Inc.*, 194 F.3d 980, 986 (9th Cir. 1999)).  Of these factors, "the

4   consideration of prejudice to the opposing party carries the greatest weight."  *Schwartz*, 2025 WL

5   2473008, at *9 (citing *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003)).

6   ## B.    Cross-Motions for Summary Judgment

7        Summary judgment is appropriate if "there is no genuine dispute as to any material fact

8   and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A dispute is

9   "genuine" if "a reasonable jury could return a verdict for the nonmoving party."  *Anderson v.*

10  *Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A fact is "material" if it "might affect the outcome

11  of the suit under the governing law."  *Id.*  The parties must cite "particular parts of materials in

12  the record."  Fed. R. Civ. P. 56(c)(1).  The Court then views the record in the light most favorable

13  to the nonmoving party and draws reasonable inferences in that party's favor.  *Matsushita Elec.*

14  *Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986).  The "purpose of summary

15  judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a

16  genuine need for trial.'"  *Id.* at 587 (citations omitted).

17       "A party seeking summary judgment bears the initial burden of informing the court of the

18  basis for its motion and of identifying those portions of the pleadings and discovery responses

19  that demonstrate the absence of a genuine issue of material fact."  *Soremekun v. Thrifty Payless,*

20  *Inc.*, 509 F.3d 978, 984 (9th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323

21  (1986)).  If the moving party meets its initial burden, the burden shifts to the nonmoving party to

22  produce evidence supporting its claims or defenses and "establish that there is a genuine issue of

23  material fact."  *Matsushita*, 475 U.S. at 585.  The nonmoving party "must do more than simply

24  show that there is some metaphysical doubt as to the material facts."  *Id.* at 586 (citation omitted).

25  "The mere existence of a scintilla of evidence in support of the [nonmovant's] position" is

26  insufficient to survive summary judgment.  *Anderson*, 477 U.S. at 252.

27       In the endeavor to establish the existence of a factual dispute, the opposing party need not

28  establish a material issue of fact conclusively in its favor.  *T.W. Elec. Serv., Inc. v. Pac. Elec.*

1    *Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). It is sufficient that "the claimed factual

2    dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at

3    trial." *Anderson*, 477 U.S. at 252 (quoting *First Nat. Bank of Ariz. v. Cities Serv. Co.*, 391 U.S.

4    253, 289 (1968)).

5          "If the nonmoving party fails to produce enough evidence to create a genuine issue of

6    material fact, the moving party wins the motion for summary judgment. But if the nonmoving

7    party produces enough evidence to create a genuine issue of material fact, the nonmoving party

8    defeats the motion." *Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*, 210 F.3d 1099,

9    1103 (9th Cir. 2000) (citing *Celotex*, 477 U.S. at 322).

10         "Cross-motions for summary judgment are evaluated separately under the same standard,

11   'giving the nonmoving party in each instance the benefit of all reasonable inferences.'" *Full*

12   *Circle of Living & Dying v. Sanchez*, No. 220CV01306KJMKJN, 2023 WL 373681, at *11 (E.D.

13   Cal. Jan. 24, 2023) (quoting *Am. C.L. Union of Nevada v. City of Las Vegas*, 333 F.3d 1092, 1097

14   (9th Cir. 2003)).

15   **III.    ANALYSIS**

16         **A.    Requests for Judicial Notice**

17         Riggs and defendants both filed requests for judicial notice. Docs. 17-7, 18-3. The

18   requests are not opposed. Riggs requests that judicial notice be taken of his complaint and

19   defendants' answer. Doc. 18-3. Defendants request that judicial notice be taken of (1) Riggs'

20   complaint; (2) Mariposa County Code ("MCC") § 17.108.180; (3) Mariposa County Public

21   Health Department Policy 12-01; (4) The meeting minutes from the Health Department staff

22   meetings on June 2 and June 15, 2022; and (5) The Mariposa County Sewage Disposal Rules.

23   Doc. 17-7.

24         Under Federal Rule of Evidence 201, "[t]he court may judicially notice a fact that is not

25   subject to reasonable dispute because it: (1) is generally known within the trial court's territorial

26   jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot

27   reasonably be questioned." Fed. R. Evid. 201(b).

28         *Pleadings*—Riggs' complaint and defendants' answer were filed in this action and already

1   form part of the record.  Docs. 1, 6.  Taking judicial notice of them is therefore unnecessary.  The

2   parties' requests for judicial notice in this regard are denied as moot.

3       *County Code, Policy, and Rules*—The MCC code section and rules are matters of public

4   record and Riggs does not dispute their authenticity.  Thus, they are properly the subject of

5   judicial notice and the request is granted as to those provisions.  *Long Beach Area Peace Network*

6   *v. City of Long Beach*, 574 F.3d 1011, 1025 n.1 (9th Cir. 2009) (taking judicial notice of a local

7   ordinance, a local regulation, and a local municipal code); *Araujo v. Coachella Valley Water*

8   *Dist.*, No. 20-CV-01800-AJB-RBM, 2021 WL 5989943, at *2 (S.D. Cal. Dec. 17, 2021) (taking

9   judicial notice of sections of the Imperial County Code).  Defendants submit that the policy is a

10  matter of public record, but it does not appear to be readily available to the public.  Nonetheless,

11  Riggs does not dispute the existence or content of this policy.  DSUF ¶¶ 10, 11.  Thus, the request

12  for judicial notice as to the policy is granted.

13      *Meeting Minutes*—The Court may and does take judicial notice of the referenced meeting

14  minutes, *see Chang v. Cnty. of Siskiyou*, 746 F. Supp. 3d 808, 814 (E.D. Cal. 2024) (taking

15  judicial notice of Siskiyou County Board of Supervisors meeting minutes without assuming

16  factual accuracy of content), subject to the limitation that judicial notice is not taken for the truth

17  of the facts asserted therein.  *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir.

18  2018) ("Just because the document itself is susceptible to judicial notice does not mean that every

19  assertion of fact within that document is judicially noticeable for its truth.").

20      **B.    Evidentiary Objections**

21      Defendants have filed evidentiary objections as part of their opposition to Riggs' motion

22  for summary judgment.  Doc. 19-1.  Specifically, they object to (1) portions of the declaration of

23  John Riggs, Doc. 18-4, as offering improper legal conclusions and lay-person testimony; (2) the

24  use of the deposition transcripts of Carolyn Coder and David Conway as support for PSUF on the

25  grounds of relevance, incompleteness, and under Federal Rule of Evidence 403; and

26  (3) paragraphs 10 and 29 of the declaration of John Riggs, Doc. 18-4, as speculative, contrary to

27  the best evidence rule, and lacking authentication, foundation, and personal knowledge.

28  Doc. 19-1.

14

Riggs contends that his declaration is proper lay-person opinion evidence under Federal Rule of Evidence 701, is rationally based on his personal perception, and is not based on scientific, technical, or other specialized knowledge within the scope of Rule 702. Doc. 22 at 5. He does not meaningfully respond to defendants' arguments regarding the use of the deposition transcripts of Carolyn Coder and David Conway. Defendants' objections are addressed sequentially below.

*Objection 1*—Defendants correctly note that portions of Riggs' declaration consist of legal conclusions, rather than factual assertions. Federal Rule of Evidence 701 permits lay-witness opinion testimony when it is rationally based on the witness's perception, is helpful to understanding the witness's testimony or determining a fact in issue, and is not based on knowledge within the scope of Rule 702. Fed. R. Evid. 701. To the extent Riggs' declaration sets out legal conclusions, those legal conclusions are not helpful to determining a material fact in issue, Fed. R. Evid. 701(b), and will not be considered as evidence on summary judgment. *Burch v. Regents of Univ. of California*, 433 F. Supp. 2d 1110, 1119 (E.D. Cal. 2006). This objection is therefore sustained to this extent.

*Objection 2*—Federal Rule of Evidence 106 "codified the common law Rule of Completeness, which exists to avert 'misunderstanding or distortion' caused by introduction of only part of a document." *United States v. Vallejos*, 742 F.3d 902, 905 (9th Cir. 2014) (citation omitted). It provides that if "a party introduces all or part of a statement, an adverse party may require the introduction, at that time, of any other part--or any other statement--that in fairness ought to be considered at the same time." Fed. R. Evid. 106. Local Rules 133(j) and 260(e) provide that parties seeking to introduce a deposition in connection with a motion for summary judgment must submit a copy of the entire deposition. L.R. 133(j), 260(e). To the extent defendants argue that Riggs relies on misleadingly incomplete portions of the deposition transcripts of Carolyn Coder and David Conway in support of the PSUF, the Court has considered the broader context of those statements in the depositions. The portions of the depositions cited in support of the PSUF are also considered in context with the parties' arguments and other pertinent evidence. Additionally, as noted, legal conclusions are not evidence. That Riggs uses

1  these depositions to argue a contrary position is not sufficient to sustain this objection under

2  Rule 403.  Finally, insofar as this objection is premised on relevance, it is overruled as the Court

3  considers the deposition testimony only to the extent relevant to a material fact at issue.  *See*

4  *Burch*, 433 F. Supp. 2d at 1119.

5          *Objection 3*—Defendants argue that the portions of Riggs' declaration regarding damages

6  are speculative, and lack authentication, foundation, and personal knowledge.  This objection

7  improperly focuses on the form of the evidence as opposed to its content.  *See Sandoval v. County*

8  *of San Diego*, 985 F.3d 657, 666 (9th Cir. 2021) ("[A]t the summary judgment stage, we do not

9  focus on the admissibility of the evidence's form.  We instead focus on the admissibility of its

10  contents.").  "[W]hen evidence is not presented in an admissible form in the context of a motion

11  for summary judgment, but it may be presented in an admissible form at trial, a court may still

12  consider that evidence."  *Burch*, 433 F. Supp. 2d at 1120 (citing *Fraser v. Goodale*, 342 F.3d

13  1032, 1037 (9th Cir. 2003)).  Riggs' sworn declaration states that he has personal knowledge of

14  the matters discussed therein.  He could testify at trial as to the extent of his damages.  *See*

15  *Fraser*, 342 F.3d at 1037 ("Fraser could testify to all the relevant portions of the diary from her

16  personal knowledge.").  To the extent Riggs' damages lack supporting documentation or are

17  undercut by contrary evidence, as defendants argue, those arguments "go to the weight of the

18  evidence, not [its] admissibility."  *Stephens v. Douglas Cnty. Fire Dist. No. 2*, No. 2:15-CV-115-

19  RMP, 2016 WL 9462337, at *5 (E.D. Wash. Sept. 7, 2016) (denying motion to strike statement of

20  fact in opposition to summary judgment).  This objection is overruled.

21          **C.    Riggs' Motion to Amend**

22          Riggs seeks to modify the scheduling order and amend his complaint to (1) allege with

23  specificity that the County defendant is liable under *Monell v. Dep't of Soc. Servs. of City of New*

24  *York*, 436 U.S. 658 (1978) based on a theory that Conway had final policymaking authority in

25  refusing to accept Riggs' TOT septic certificates; (2) assert that exhaustion of administrative

26  remedies is not a prerequisite to bringing an action under 42 U.S.C. § 1983 pursuant to *Patsy v.*

27  *Bd. of Regents of State of Fla.*, 457 U.S. 496 (1982); (3) allege that he has a valid excuse for not

28  exhausting administrative remedies pursuant to *Parthemore v. Col*, 221 Cal. App. 4th 1372

16

(2013); and (4) eliminate his fifth, sixth, seventh, eighth, ninth and tenth causes of action. Riggs contends that he has established good cause to obtain relief under Rule 16. Specifically, Riggs argues that he diligently assisted the Court in recommending and creating a workable scheduling order, that he was unable to comply with the January 15, 2024 deadline for requesting leave to amend because he was unaware defendants would challenge the sufficiency of his complaint through a motion for summary judgment, and that he diligently moved to amend after realizing he could not comply with the scheduling order. Riggs also argues amendment is warranted under the Rule 15 factors for various reasons.

In opposition, defendants argue that Riggs has failed to demonstrate good cause because he knew or should have known of the pleading standards applicable to the *Monell* claim he intended to raise in the complaint, he provides no explanation as to why the pleading defects in the complaint could not have been discovered sooner, and he inaccurately claims to have first learned of the issue on December 20, 2024 through the filing of defendants' motion for summary judgment, as that motion was provided to him on December 6, 2024. Defendants argue that, under Rule 15, Riggs unduly delayed because his proposed amendment is based on the complaint's pleading deficiencies rather than on any new facts uncovered by diligently pursuing discovery. Defendants also contend that granting leave to amend would be futile as Conway is not a final policymaker with respect to TOT certificates or Health Department policy. Finally, defendants assert that there is no need to amend the complaint for Riggs to assert arguments with respect to the exhaustion of administrative remedies.

Rule 16's "good cause standard typically will not be met where the party seeking to modify the scheduling order has been aware of the facts and theories supporting amendment since the inception of the action." *SFR Invs. Pool 1, LLC v. Fed. Home Loan Mortg. Corp.*, No. 215CV00806APGNJK, 2020 WL 4059696, at *3 (D. Nev. July 20, 2020) (citing *United States v. Dang*, 488 F.3d 1135, 1142–43 (9th Cir. 2007)). In this case, the complaint seeks to hold defendants liable, in part, under 42 U.S.C. § 1983, and references a "policy" of refusing to accept TOT septic certificates from Riggs. Doc. 1 at ¶¶ 16–18, 20. It is well established that "a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell*, 436

U.S. at 691. "Instead, [liability may extend] when execution of a government's policy or custom . . . inflicts the injury that the government as an entity is responsible [for] under § 1983." *Id.* at 694; *see also Barone v. City of Springfield, Oregon*, 902 F.3d 1091, 1107 (9th Cir. 2018) (evaluating *Monell* claim under final policymaker theory). The pleading standards with respect to a *Monell* claim were well defined when Riggs filed his complaint. If Riggs intended to assert a *Monell* claim under a final policymaker theory, he knew or should have known of the requirement to allege facts demonstrating a plausible entitlement to relief under that theory. *See Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *see also SFR Invs. Pool 1, LLC v. Fed. Home Loan Mortg. Corp.*, No. 215CV00806APGNJK, 2020 WL 4059696, at *4 (D. Nev. July 20, 2020) (movant should have known basis for proposed amendment under preexisting law).

The scheduling order's deadline to amend the pleadings expired on January 15, 2024, yet Riggs did not move to amend the complaint until almost a year later, on January 14, 2025. As defendants correctly note, Riggs has not moved to amend on the basis of newly discovered evidence. Instead, the motion appears to have been occasioned by defendants' identification of pleading deficiencies that reasonably should have been known to Riggs before the amendment deadline expired. *C.f. Milky Way Int'l Trading Corp. v. Ningbo Sunny Int'l Co.*, No. 2:23-CV-08259-JLS-JC, 2025 WL 1544330, at *6 (C.D. Cal. Mar. 17, 2025) (finding no good cause where movant sought to amend over six months after the scheduling order deadline without newly-discovered facts to explain the delay, and movant knew or should have known basis for amendment since the inception of action). Under these circumstances, Riggs was not diligent in seeking amendment to allege a final policymaker theory of municipal liability under *Monell* and has not satisfied the requirement of good cause under Rule 16.

As to amending the complaint to include *argument* with respect to the exhaustion of administrative remedies, the Court finds this unnecessary. These arguments are already asserted in Riggs' briefing on the motions for summary judgment. *Compare* Doc. 23-2 at ¶¶ 45, 65, 80–85, 100–05, *with* Docs. 20 at 11–16; 22 at 12–13. The exhaustion of administrative remedies is an affirmative defense that defendants may elect to raise, but exhaustion is not a prima facie or substantive element of any of Riggs' claims. The proposed amendment on these grounds is not

1    based on any newly discovered facts.

2        Riggs does not address diligence or good cause with respect to his proposed amendment

3    to eliminate claims five through ten of his complaint.  To the extent Riggs seeks to dismiss those

4    state law claims without prejudice, that request is moot given that, as noted below, the Court is

5    declining to exercise supplemental jurisdiction over Riggs' state law claims.

6        For the reasons explained above, Riggs' motion to modify the scheduling order and to

7    amend the complaint is denied.

8        **D.    Defendants' Motion for Summary Judgment**

9        Defendants move for summary judgment, or in the alternative, partial summary judgment

10   on Riggs' claims for (1) denial of substantive due process in violation of the Fourteenth

11   Amendment to the United States Constitution, pursuant to 42 U.S.C. § 1983; (2) denial of

12   procedural due process in violation of the Fourteenth Amendment to the United States

13   Constitution, pursuant to 42 U.S.C. § 1983; (3) denial of substantive due process under Article I,

14   Section 7 of the California Constitution; (4) denial of procedural due process under Article I,

15   Section 7 of the California Constitution; (5) slander per se; (6) trade libel and defamation;

16   (7) intentional interference with contractual relations; (8) intentional interference with prospective

17   economic advantage; (9) intentional infliction of emotional distress; and (10) negligent infliction

18   of emotional distress.  For the reasons explained below, the Court finds that defendants are

19   entitled to summary judgment on the federal constitutional claims and declines to exercise

20   supplemental jurisdiction over the remaining claims, which arise under state law.

21        **1.    Federal Substantive and Procedural Due Process Claims**

22        Under 42 U.S.C. § 1983, a private right of action exists against anyone who, "under color

23   of" state law, causes a person to be subjected "to the deprivation of any rights, privileges, or

24   immunities secured by the Constitution and laws."  42 U.S.C. § 1983.  "Section 1983 does not

25   create substantive rights; it merely serves as the procedural device for enforcing substantive

26   provisions of the Constitution and federal statutes."  *Crumpton v. Gates*, 947 F.2d 1418, 1420

27   (9th Cir. 1991) (citing *Chapman v. Houston Welfare Rts. Org.*, 441 U.S. 600, 617 (1979)).

28        The Fourteenth Amendment provides that "[n]o State shall . . . deprive any person of life,

1  liberty, or property, without due process of law." U.S. Const. amend. XIV.  The substantive

2  component of "the Due Process Clause specially protects those fundamental rights and liberties

3  which are, objectively, 'deeply rooted in this Nation's history and tradition,' and 'implicit in the

4  concept of ordered liberty,' such that 'neither liberty nor justice would exist if they were

5  sacrificed.'" *Washington v. Glucksberg*, 521 U.S. 702, 720–21 (1997) (internal quotations

6  omitted).  Procedurally, "[t]he fundamental requirement of due process is the opportunity to be

7  heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge*, 424 U.S. 319,

8  333 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)).

9      Defendants argue they are entitled to summary judgment on the federal constitutional

10  claims because (1) Riggs cannot establish liability under *Monell*, (2) Conway is entitled to

11  qualified immunity, and (3) Riggs cannot establish a constitutional violation.[3]  Below, the Court

12  addresses the first and second arguments and, finding them dispositive of the federal

13  constitutional claims, declines to consider the third.

14          a.      Liability under *Monell*

15      In their motion for summary judgment, defendants contend that it is unclear whether the

16  complaint alleges a *Monell* claim, and if so, under what theory.  In opposition, Riggs clarifies that

17  "he alleges liability against the County of Mariposa based upon final policy maker liability."

18  Doc. 20 at 28.

19      "A government entity may not be liable under § 1983 unless a policy, practice, or custom

20  of the entity can be shown to be a moving force behind a violation of constitutional rights."

21  *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011).  "In order to establish a liability

22  for governmental entities under *Monell*, a plaintiff must prove (1) that [the plaintiff] possessed a

23  constitutional right of which he was deprived; (2) that the municipality had a policy; (3) that this

24  policy amounts to deliberate indifference to the plaintiff's constitutional right; and (4) that the

---

25  [3] Defendants also contend they are entitled to summary judgment on these claims based on Riggs'

26  failure to exhaust administrative remedies.  This argument is unpersuasive as defendants concede that exhaustion is discretionary in this context.  Indeed, the Supreme Court has explained that the

27  "exhaustion of state administrative remedies should not be required as a prerequisite to bringing an action pursuant to § 1983." *Patsy v. Bd. of Regents of State of Fla.*, 457 U.S. 496, 516 (1982).

28  Accordingly, the defendants' motion is denied in this respect.

1    policy is the moving force behind the constitutional violation." *Id.* at 900 (internal quotation

2    marks and citation omitted).

3        A plaintiff can show the existence of an entity's policy in one of three ways. *See Thomas*

4    *v. County of Riverside*, 763 F.3d 1167, 1170 (9th Cir. 2014). First, an entity may be held liable

5    when it acts "pursuant to an expressly adopted policy." *Id.* (citing *Monell*, 436 U.S. at 694).

6    Second, an entity may be held liable for a "longstanding practice or custom." *Id.* Such

7    circumstances may arise when, for instance, the entity "fail[s] to implement procedural

8    safeguards to prevent constitutional violations" or when it fails to adequately train its employees.

9    *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1143 (9th Cir. 2012) (citing *Oviatt v. Pearce*, 954

10   F.2d 1470, 1477 (9th Cir. 1992)). Third, an entity may be held liable when "an official with final

11   policy-making authority ratified a subordinate's unconstitutional decision or action and the basis

12   for it." *Gillette v. Delmore*, 979 F.2d 1342, 1346–47 (9th Cir. 1992).

13       "[W]hether an official had final policymaking authority is a question of state law."

14   *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986). In answering this question, courts

15   "must identify those officials or governmental bodies who speak with final policymaking

16   authority for the local governmental actor concerning the action alleged to have caused the

17   particular constitutional or statutory violation at issue." *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S.

18   701, 737 (1989). "A municipal employee may act as a *de facto* policymaker under § 1983

19   without explicit authority under state law, but [courts] are ordinarily 'not justified in assuming

20   that municipal policymaking authority lies somewhere else than where the applicable law

21   purports to put it.'" *Lytle v. Carl*, 382 F.3d 978, 982–83 (9th Cir. 2004) (quoting *Praprotnik*, 485

22   U.S. at 126).

23       In this case the relevant area of policymaking is TOT septic certification-related decisions,

24   particularly as to when the Health Department may refuse to accept certifications. Neither party

25   has identified a source of state law precisely on point, but the defendants offer closely related

26   sources that provide compelling guidance in answering the question. Before turning to these

27   sources, the Court first notes that California law establishes that each "county shall have a board

28   of supervisors" and that a county "may exercise its powers only through the board of supervisors

1   or through agents and officers acting under authority of the board or authority conferred by law."

2   Cal. Gov't Code §§ 25000, 23005.  These provisions supply a default rule that a county acts

3   through its board and that all "powers," including final policymaking authority, rest with the

4   board absent an ordinance, resolution, or sustained board ratification surrendering such authority.

5   *Levy v. Cnty. of Alpine*, No. 2:13-CV-02643-RHW-DB, 2017 WL 1476899, at *2 (E.D. Cal. Apr.

6   25, 2017) (finding the "County Board of Supervisors is a final policymaker under state law, as it

7   is the governing body of the County.") (citing Cal. Gov't Code § 25000), *aff'd*, 741 F. App'x 520

8   (9th Cir. 2018); *MSB Invs., LLC v. Cnty. of Santa Barbara*, No. 2:24-CV-07237-MRA-AS, 2025

9   WL 2377061, at *10 (C.D. Cal. June 13, 2025) ("Under California law, the Board is the County's

10  final policymaking authority.") (citing Cal. Gov't Code § 23005).  The Court next considers

11  whether another source of law delegated final policymaking authority to Conway.

12        Mariposa County Code § 17.108.180(E), which governs residential transient rentals, is

13  one potentially guiding provision.  It provides:

14        The structure and facilities used shall be approved for such use by
        the Mariposa County health department and shall at a minimum
15        comply with the following standards:

16        1. The residence shall be serviced by an approved community sewage
        disposal system, or have an individual system satisfying current code
17        requirements.  Existing and newly constructed individual systems
        shall meet the current sizing requirements of the health department
18        for new dwellings based on the number of bedrooms in the dwelling,
        or the system shall be designed to serve the planned number of
19        occupants.  Septic systems serving homes constructed in 1985 or
        before may be required to be upgraded when the home is being
20        converted to bed and breakfast or vacation rental use.

21        2. Water supply shall be by an approved community system, or from
        an individual well or spring approved by the health department
22        having quality and quantity satisfying current health department
        requirements.
23
24  Doc. 17-4 at 17–18.  Section 17.108.180(E) requires Health Department approval and prescribes

25  minimum technical standards for transient occupancy facilities, but it does not, by its terms, vest

26  unreviewable policymaking authority in the Director of the Health Department, here, Conway, to

27  determine County policy on who may submit acceptable TOT septic certifications.  Absent

28  express delegation or evidence of board ratification, section 17.108.180(E) is more naturally read

22

1  as creating an administrative and technical approval role as opposed to policymaking authority.

2  This conclusion is confirmed when reading in harmony the following related provisions.

3  First, the Mariposa County Sewage Disposal Rules authorized "per Section 13.08.090 [of

4  the Mariposa] County Code,"[4] establish "uniform procedures and standards regulating on-site

5  sewage disposal system design and installation.  Doc. 17-4 at 22, 23.  One of its purposes is to

6  "establish a uniform, consistent policy regarding implementation and enforcement of the

7  provisions of this chapter."  *Id.* at 23.  The rules establish "the administrative procedure to

8  issuance of permits and provide for approval of plans and inspection of systems.  The[] rules and

9  regulations prescribe . . . administrative procedures for Health Department involvement in the

10  planning and permitting process of the County of Mariposa."  *Id.*  "Nothing contained in these

11  rules and regulations shall be construed to prevent the Health Officer or his authorized

12  representative from requiring compliance with higher requirements than those contained herein

13  where such higher requirements are essential to maintain and protect the public health, safety and

14  welfare."  *Id.* at 31.  "In the event that approval of a proposed system is denied by the Health

15  Department, an appeal may be made to the Board of Supervisors whose decisions shall be final."

16  *Id.*

17  Second, Health Department Policy 13-17, titled "Appeals of Health Department

18  Inspector's Determinations" is signed by the Health Officer and states:

19  
20  Any citizen, owner, contractor, or operator who feels that an inspection by a Health Department Inspector was, for any reason, unfair may appeal in the following manner:

21  
22  1. He should appeal directly to the inspector who made the inspection, optimally at the time of the inspection itself.

23  2. If not satisfied at that level, he may direct his appeal to the Environmental Health Director, Health Officer or Department Head.

24  _____

[4] Section 13.08.090 of the Mariposa County Code states:

25  The *health officer* shall, from time to time as circumstances require, adopt, revise,

26  or otherwise provide rules and regulations establishing application processing procedures, minimum data needs and controlling the installation, operation, and maintenance of private sewage disposal systems in the county.  *Such rules and*

27  *regulations shall be subject to the approval of the board and shall be considered a part of this chapter.*  (Ord. 741 Sec.1, 1989).

28  Mariposa Cnty., Cal., Code § 13.08.090 (emphasis added).

1          3.  If unsatisfied with his appeal to the Health Officer, he may appeal
           to the Board of Supervisors.

2

3  *Id.* at 74.

4          The Sewage Disposal Rules and Policy 13-17 indicate that Conway is not a final

5  policymaker with respect to TOT septic certification-related decisions as both provisions provide

6  for appeals to the Board of Supervisors at the final level of review.  Moreover, the formally

7  executed Health Department policies that appear in the record are both signed by the Health

8  Officer, not Conway.  *Id.* at 38 (Policy 12-01 Transient Rental Public Health Requirements), 74.

9  While this fact is not dispositive on its own, Section 13.08.090 of the Mariposa County Code—

10  delegating to the Health Officer the authority to adopt rules and regulations governing application

11  processing—provides strong indication of where *initial* policymaking discretion lies and supports

12  the conclusion, confirmed by harmonizing related provisions, that the Board of Supervisors is the

13  entity that "speak[s] with *final* policymaking authority" for the County.  *Jett*, 491 U.S. at 737

14  (emphasis added).

15          For these reasons, the Court finds that Conway lacked final policymaking authority.

16  Therefore, to succeed on his *Monell* claim, Riggs must show that the County of Mariposa's Board

17  of Supervisors "ratified a subordinate's unconstitutional decision or action and the basis for it."

18  *Gillette v. Delmore*, 979 F.2d 1342, 1346–47 (9th Cir. 1992).  Riggs presents no evidence that

19  Conway's decision to stop accepting TOT septic certifications from him was ever ratified by the

20  Board of Supervisors.  Accordingly, the County defendant's motion for summary judgment as to

21  the *Monell* claim is granted.

22                              b.      Qualified Immunity

23          Qualified immunity protects government officials from liability under § 1983 "unless

24  (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their

25  conduct was 'clearly established at the time.'"  *D.C. v. Wesby*, 583 U.S. 48, 62–63 (2018)

26  (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)).  "Qualified immunity balances two

27  important interests—the need to hold public officials accountable when they exercise power

28  irresponsibly and the need to shield officials from harassment, distraction, and liability when they

24

1    perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).  Courts are

2    "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified

3    immunity analysis should be addressed first in light of the circumstances in the particular case at

4    hand." *Id.* at 236.  "Addressing the second prong before the first is especially appropriate where

5    'a court will rather quickly and easily decide that there was no violation of clearly established

6    law.'" *Jessop v. City of Fresno*, 936 F.3d 937, 940 (9th Cir. 2019) (quoting *Pearson*, 555 U.S. at

7    239).  As explained below, whether Conway is entitled to qualified immunity for his decision to

8    stop accepting TOT septic certifications from Riggs is more appropriately resolved at the second

9    step.

10        "The law is clearly established when precedent is 'clear enough that every reasonable

11    official would interpret it to establish the particular rule the plaintiff seeks to apply.'" *Calonge v.

12    City of San Jose*, 104 F.4th 39, 47 (9th Cir. 2024) (quoting *D.C. v. Wesby*, 583 U.S. 48, 63

13    (2018)).  "The rule must be settled law, which means it is dictated by controlling authority or a

14    robust consensus of cases of persuasive authority." *Smith v. Agdeppa*, 81 F.4th 994, 1001 (9th

15    Cir. 2023) (internal quotation marks omitted).  "Although '[the Supreme] Court's caselaw does

16    not require a case directly on point for a right to be clearly established, existing precedent must

17    have placed the statutory or constitutional question beyond debate.'" *Kisela v. Hughes*, 584 U.S.

18    100, 104 (2018) (quoting *White v. Pauly*, 580 U.S. 73, 78–79 (2017)).  "This demanding standard

19    protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Wesby*, 583

20    U.S. at 63 (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

21        The Supreme Court has instructed that courts should not define clearly established law at

22    an unduly high level of generality.  *City & Cnty. of San Francisco, Calif. v. Sheehan*, 575 U.S.

23    600, 613 (2015).  In qualified immunity cases, the plaintiff bears the burden of demonstrating that

24    the law was clearly established.  *Hart v. City of Redwood City*, 99 F.4th 543, 555 (9th Cir. 2024)

25    (citing *Isayeva v. Sacramento Sheriff's Dep't*, 872 F.3d 938, 946 (9th Cir. 2017)).

26        In arguing the issue of qualified immunity, Riggs does not provide meaningful analysis on

27    how the facts of any specific case show that the law was clearly established as to the

28    constitutional violations he asserts.  Doc. 20 at 28–30.  Instead, Riggs presents argument on the

1    issue only at the highest level of generality.  *See, e.g.*, *id.* at 29 (first citing *Harlow v. Fitzgerald*,

2    457 U.S. 800, 815 (1982); then arguing Conway "knew or reasonably should have known that the

3    action he took within his sphere of official responsibility would violate [Riggs'] constitutional

4    rights;" and then asserting Conway implemented "the June 16, 2022, policy with the malicious

5    intention to cause a deprivation of constitutional rights or other injury.").  The same is also true to

6    the extent Riggs references other sections of his opposition in support of his qualified immunity

7    argument.  Throughout the opposition, cases are cited for general statements of the law without

8    discussion of how the specific facts in those cases would have placed Conway on notice that his

9    actions were unconstitutional.  Although "general statements of the law are not inherently

10   incapable of giving fair and clear warning to officers," *Kisela*, 584 U.S. at 105, the Ninth Circuit

11   has recognized that "the law regarding procedural due process claims 'can rarely be considered

12   "clearly established" at least in the absence of closely corresponding factual and legal

13   precedent.'"  *Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist.*, 149 F.3d 971, 983 (9th Cir.

14   1998) (quoting *Baker v. Racansky*, 887 F.2d 183, 187 (9th Cir. 1989)).  Riggs fails to meet his

15   burden in this regard.

16        As to substantive due process, even assuming the submission of TOT septic certifications

17   is "a constitutionally protected life, liberty or property interest," *Shanks v. Dressel*, 540 F.3d

18   1082, 1087 (9th Cir. 2008), Riggs does not argue such an interest implicates a fundamental right,

19   effectively conceding that rational basis review applies.  *C.f. id.* at 1088–89 (discrete permitting

20   decision subject to rational basis review).  In light of this deferential standard, which places an

21   "exceedingly high burden [on the challenger] to show . . . [un]constitutionally arbitrary" action,

22   *id.* at 1088, Riggs' failure to meaningfully discuss the facts of the existing precedent he cites

23   underscores that he has not met his burden to show the law was clearly established as to his

24   substantive due process claim.

25        The facts of this case are rather unique and the procedural and substantive due process

26   violations Riggs asserts are not clearly established under existing law.  Among other deficiencies,

27   Riggs fails to show that he was denied adequate review procedures.  Riggs never responded to the

28   June 16, 2022 letter inviting him to engage with the Health Department regarding Conway's

1    decision to stop accepting Riggs' TOT septic certifications.  And when Coder called Riggs

2    regarding inconsistencies in his TOT septic certifications, she informed him that he could contact

3    the Health Department to clarify its requirements.  *Cf. Sanchez v. City of Santa Ana*, 915 F.2d

4    424, 430 (9th Cir. 1990) (finding due process violation where "[plaintiff] received no hearing or

5    an opportunity to be heard *at any time*" even after "attempt[ing] to invoke the grievance

6    procedure.").  Additionally, Conway's decision did not extend to other aspects of Riggs' work as

7    a general engineering contractor, and the Health Department continued to perform inspections

8    that Riggs requested and to issue permits associated with Riggs' general engineering contractor's

9    license for the installation of on-site sewage disposal systems in Mariposa County.  Riggs'

10   contractor's license was never suspended or revoked, and he was neither a county employee nor a

11   party to any contractual relationship with the County or Health Department.[5]

12       Riggs has failed to meet his burden to show that the law was clearly established with

13   respect to his substantive and procedural due process claims under the Fourteenth Amendment.

14   Accordingly, Conway is entitled to qualified immunity on those claims.

15       Defendants' motion for summary judgment as to Riggs' federal claims is therefore

16   granted for the reasons set forth above.

17                    **2.    Supplemental Jurisdiction**

18       As the Court has granted summary judgment for defendants on Riggs' federal claims, only

19   state-law causes of action remain.  Under 28 U.S.C. § 1367(c)(3), a district court may decline to

20   exercise supplemental jurisdiction over related claims when it "has dismissed all claims over

21   which it has original jurisdiction."  In exercising this discretion, courts weigh the factors of

22   "judicial economy, convenience, fairness, and comity."  *Carnegie-Mellon Univ. v. Cohill*, 484

23   U.S. 343, 350 (1988); *Acri v. Varian Assocs., Inc.*, 114 F.3d 999, 1001 (9th Cir. 1997) (en banc).

24

25   [5] Even if Riggs had made such showings, it is not clear that he could have shown a violation of a
     clearly established right.  *See Foss v. Nat'l Marine Fisheries Serv.*, 161 F.3d 584, 587, 589–90

26   (9th Cir. 1998) (denial of commercial fisherman's application for a federal fishing quota permit
     comported with due process despite effectively foreclosing him from halibut and sablefish fishing

27   in the Alaska waters); *Lum v. Jensen*, 876 F.2d 1385, 1389 (9th Cir. 1989) (finding "no clearly
     established constitutional right to substantive due process protection of continued public

28   employment.").

Although the case is at a relatively advanced stage, the remaining claims all arise under state law.  Riggs' state-law causes of action assert claims under the California Constitution and various tort claims under California law, all of which raise substantive issues appropriately addressed by the California courts.  Moreover, Riggs requested to amend his complaint to dismiss most of his state law claims from this action.  There has been no substantial federal motion practice or pretrial rulings directed specifically at the state claims, and the Court has not invested significant judicial resources in resolving them.  On balance, the interests of comity and federalism favor allowing California courts to interpret and apply their own law in the first instance.  This conclusion is consistent with the well-recognized understanding that "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims."  *See, e.g.*, *Cohill*, 484 U.S. at 350 n.7.

Accordingly, the Court declines to exercise supplemental jurisdiction under 28 U.S.C. § 1367(c)(3), and the remaining state-law claims are dismissed without prejudice to refiling in state court.  Given this ruling, defendants' motion for summary judgment as to claims three through ten is denied as moot.

### E.    Riggs' Motion for Summary Judgment

Riggs moves for summary judgment, or in the alternative, partial summary judgment on the first four claims asserted in his complaint.  For the reasons explained above, Riggs' motion is denied as to the federal constitutional claims and denied as moot as to the remaining claims.

## IV.    CONCLUSION

Accordingly:

1.    Defendants' motion for summary judgment, Doc. 17, is granted in part and denied in part, as follows: the motion is granted as to the first and second claims in the complaint, and the motion is denied as moot as to all other claims;

2.    Riggs' motion for summary judgment, Doc. 18, is denied as to the first and second claims asserted in his complaint and denied as moot as to the remaining claims;

1        3.     Riggs' motion to modify the scheduling order and to amend the complaint,

2              Doc. 23, is denied;

3        4.     The third, fourth, fifth, sixth, seventh, eighth, ninth, and tenth claims in the

4              complaint are dismissed without prejudice to refiling in state court; and

5        5.     The Clerk of the Court is directed to enter judgment in favor of defendants on the

6              first and second claims in the complaint and to close this case.

7

8

9  IT IS SO ORDERED.

10    Dated:   November 14, 2025

11                                            UNITED STATES DISTRICT JUDGE